### KIRBY v. SOUTHERN RY.

1. HIGHWAYS—PUBLIC ROADS—PRIVATE WAYS—"TRAVELED PLACE"—CROSSINGS.—There are in this State three kinds of roads: (1) public highways, (2) public roads, (3) private ways. The right of the public to the use of a public road, whether through enclosed or woodland, may be established by proof of twenty years use and nothing more, and such a road where it crosses a railway track is a "traveled place," under Rev. Stat. 1685. (MR. JUSTICE JONES *dissents*) But right to use of a private way is shown by twenty years *adverse* use. Definition of the three kinds of roads in charge approved.

2. RAILROADS—CROSSINGS—NEGLIGENCE—JURY.—In approaching a railway track for purpose of crossing, a person is bound to exercise due care and caution; but it would be a charge on the facts to instruct the jury what acts make up due care and caution, and in all cases the jury must judge from all the circumstances what care should be exercised.

3. IBID.—IBID.—IBID.—CROSSINGS.—A railroad company is liable for injury to a person going on its tract at a public crossing or "traveled place," after hearing a train approaching, whether the signals are given or not, unless his acts in so doing amount to gross or wilful negligence, or he was then doing some unlawful act.

4. IBID.—SPEED—CHARGE—JURY—NEGLIGENCE.—Whether any rate of speed shows negligence, and whether any rate of speed is too great, is a question for the jury, and Judge cannot instruct jury that a given speed does or does not constitute negligence.

5. IBID.—NEGLIGENCE.—A railroad company has no right to expect more than ordinary care from a person approaching its track at a place other than a public crossing or "traveled place," whether the view there be obstructed or not.

6. IBID.—IBID.—CROSSINGS—SPEED—JURY.—RAILROADS have the right to expect a person approaching its track at a public crossing when signals are given, to use ordinary care; but whether the rate of speed at which its train is run across the crossing is negligence, is a question for the jury.

7. IBID.—SPEED—CHARGE.—Whether a train at one point is running at same rate of speed as at another point, is a question of fact, and Judge cannot instruct the jury that proof of a certain rate of speed at one point is not proof of the same rate at another point.

8. IBID.—CROSSINGS—REQUESTS.—CHARGE as to negligence by railroad by failure to give statutory signals at crossing, and as to proximate cause of injury there, held to be substantially correct; and if appellant desired the law more specifically stated, he should have so requested.

9. PRESUMPTION—NEGLIGENCE.—CHARGE as to presumptions applied to negligence and to contributory negligence, approved.

10. NEGLIGENCE.—CONTRIBUTORY NEGLIGENCE is a want of ordinary care upon the part of a person injured by the actionable negligence of another, combining and concurring with that negligence, and contributing to the injury as a proximate cause thereof without which the injury would not have occurred.

Before TOWNSEND, J., Spartanburg, spring term, 1901. Affirmed.

Action by Sarah Jane Kirby, as administratrix of Isom F. Kirby, against Southern Railway. From judgment for plaintiff, defendant appeals.

*Messrs. Duncan & Sanders,* for appellant, cite: *As to what is a "traveled place," under the statute:* Rev. Stat., 1685; 41 S. C., 20; 59 S. C., 433; 1 Bail., 58; 3 Rich., 85; Cheves, 1; 1 Spear, 22; 11 S. C., 360; 2 Strob., 60; 6 Rich., 400. *As to duty of a person on approaching a railway track where view is obstructed:* 4 Ency., 1 ed., 945, 946; 8 Am. St. R., 804; 25 Mich., 290; 2 Wood on R. R., 1519, 1518, 1540, 1541; 55 Am. St. R., 289; 66 N. W. R., 883; 21 Am. St. R., 671; 8 *Id.*, 810; 26 *Id.*, 585; 95 U. S., 697; 65 Am. St. R., 379; 105 Mass., 79; 1 Thomp. on Neg., 426; 11 Am. St. R., 783; Cooley on Torts, 2 ed., 751-2; Beach on Con., sec. 65; Patt. Ry. Acc. Law, sec. 177; 54 Am. St. R., 290; 9 Am. St.

R., 438; 57 S. C., 243; 61 S. C., 559. *When a traveler sees or hears the train approaching, it is not necessary to give the signal, and the statute does not apply in such case:* 34 S C.; 451; 47 S. C., 382. *Rapidly running a train at point where passengers are not expected, is not negligence:* 34 S. C., 451; 7 S. C., 402; 98 Wis., 157; 16 Ohio, 316; 44 N. Y., 465; 113 Ind., 196; 4 Ency., 1 ed., 932. *And if signals are given, not at crossings:* 16 Ohio, 314; 30 N. J. L., 188; 44 N. Y., 465; 19 L. R. A., 565; 57 S. C., 210; 52 S. C., 34. *Statutory rule that only culpable negligence will debar recovery for an injury at a crossing, does not apply to an action at common law:* 61 S. C., 565; 47 S. C., 114, 381.

*Messrs. Stanyarne Wilson* and *D. E. Hydrick,* contra, cite : *As to roads through open lands and woodland:* 1 Bail., 56, 242; 11 Rich., 264; Cheves, 3; 2 Hill, 642; 2 Strob., 60; 1 McM., 329; 6 Rich., 396; 39 S. C., 23; 1 Speer, 22. *What are "traveled places:"* 33 S. C., 139; 34 S. C., 299, 450; 41 S. C., 20; 59 S. C., 434; 47 S. C., 385; 41 S. C., 1. *As to degree of care to be exercised by the party injured:* 41 S. C., 8; 47 S. C., 382. *Court could not charge what acts constitute negligence:* 95 U. S., 162; 59 S. C., 99, 484; 41 S. C., 19; 34 S. C., 450. *Not necessary to show that failure to give signals is proximate cause of injury:* 47 S. C., 110. *Definition of contributory negligence:* 7 Ency., 2 ed., 371; 56 S. C., 91; 58 S. C., 228.

April 15, 1902.. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action for damages for killing Isom F. Kirby in the manner set forth in the complaint, which, omitting the formal portions thereof, is as follows :

"3. That near the store of Clifton Manufacturing Company, located at Converse station, on the line of said railway, in Spartanburg County, there was on December 25th, 1897, and there had been for a long time previously, a road or trav-

eled place, upon which people came and went at will, on foot, horseback and in vehicles, going to and from beef market, work, pasture and other places and for other purposes; and that said railway crossed said road near said store; that just west of said crossing, the railroad track curved in a deep cut, which obstructed the view and hearing of trains coming from the west.

"4. That on December 25th, 1897, while Isom F. Kirby was traveling along said traveled place, as he had the right to do, and driving his cow, he was struck and killed at said crossing by the engine of a train of defendant company, going north over said track at great speed.

"5. That his death was caused by the gross negligence of defendant in the following respects, to wit: (a) The train was off schedule time, being some two hours late, and yet it crossed said traveled place at as great if not greater speed as when on schedule time. (b) The train approached said crossing from a curve in the deep cut which made the approach dangerous even at a slow speed, and yet it approached and crossed said traveled place at a great speed. (c) There was no sign alongside said public road, in violation and disregard of the requirements of sec. 1686 of the Revised Statutes of the said State of South Carolina. (d) A bell was not rung nor was a whistle sounded by the engineer or fireman on the locomotive of said train, at a distance of 500 yards from said crossing, nor was any bell kept ringing or whistle kept whistling until the engine had crossed said traveled place; such omission being gross negligence, and in violation and disregard of sec. 1685 of the said Revised Statutes."

The defendant denies the material allegations of the complaint, and sets up the defense of contributory negligence. The jury rendered a verdict in favor of the plaintiff for $5,000.

The defendant appealed upon numerous exceptions, the first of which is as follows: "In not charging defendant's second request without modification or qualification, as fol-

32—63

lows: '2. A traveled place does not always mean a place where people are accustomed to cross a railway track; therefore, the mere fact that people are accustomed to cross at such place does not of itself make it a traveled place, within the meaning of the statute. To constitute a traveled place, it must be shown, by the preponderance of the evidence, to be a place where persons have acquired the right to travel—that is, it must be shown that persons undertaking to travel along and across such place could not be legally prevented from doing so by the owner of the land over and across which such place passes; and unless it has been shown in this case by the preponderance of the evidence that persons have acquired such a right to travel over and across the point where the deceased is said to have been killed, then it cannot be said to have been a traveled place, within the meaning of the statute; and if it is not such a place, then the railway company was not bound, under the statute, to ring its bell or sound its whistle for 500 yards before reaching such place.' (a) It is respectfully submitted to the Court that his Honor, in modifying and qualifying this request as shown by his charge just succeeding the same, erred, in that the request in itself embodied the true definition of what it took to constitute a traveled place, and any addition, qualification or explanation such as he gave was calculated to mislead and confuse the jury. (b) It is also respectfully submitted that his Honor's qualification and modification or explanation was calculated to mislead and confuse the minds of the jury, as to the difference to the rights that could, under the law, be acquired by a person using a path through the uninclosed lands of another, even though such path did lead from one public road to another, or from one public place to another, and the rights that could be acquired by using a path leading through inclosed or cultivated lands, or by the use of a neighborhood road leading from one public road to another or from one public place to another. (c) Because his Honor's explanation or modification immediately succeeding such request was

calculated to cause the jury to believe, that a legal right could be acquired by the public generally using a mere path through the uninclosed land of another for more than twenty years, if such path led between two public roads or two public places; whereas, it is respectfully submitted that the public or persons generally cannot under the laws of this State acquire a legal right merely by using a footpath through the uninclosed lands of another, even though such path might lead from one public road to another; the presumption being, where nothing else appears except that they had been accustomed to use such path for twenty years or more, that such use was permissive and not adverse.     (d) Because his Honor's charge in qualification, explanation or modification of the defendant's second request, as shown by such charge immediately following such request, was calculated, as it is respectfully submitted, to mislead and confuse the jury as to the distinction between the rights that could be acquired by persons or the public generally, by the mere accustomed use, on foot and on horseback, of a mere path leading through the uninclosed lands of another, even though such path did connect one public road with another; and the rights that could be acquired by using such path adversely, or by the right of a neighborhood road leading from one public place to another.     (e) In that his Honor's charge in explanation, modification or qualification of defendant's second request did not draw the distinction between rights that could be acquired by the accustomed use of a mere path leading through the uninclosed lands of another, and the rights that could be acquired by the adverse user of a path through cultivated lands, or of the use of a neighborhood road." In disposing of the requests set out in the exception, his Honor says: "Keep your mind on the statute, for I am talking now about traveled places. 'To constitute a traveled place, it must be shown by the preponderance of the evidence, etc.' I charge you that. The difference between plaintiff's counsel and defendant's counsel, it seems to me from the argument, is, how that right to be there is acquired by law.

There is no doubt that a traveled place is a place where a person has a legal right to be, and where he cannot be prevented from going by law.    A traveled place is a place where a person has a legal right to be; but how to acquire the right, it seems to me, is the difference between plaintiff's counsel and defendant's counsel; how that right is acquired.    Now, the statute refers to three places, as I told you, and called your special attention to highway, street and traveled place.    There might not be much trouble and probably no difference in their argument, as I see it, as to what is a highway or a public street.    The contention is mostly upon what is a traveled place.    Whether it be a highway, or street, or traveled place, it is a place where the people have the right—that is, the legal right—and the question is, how it may be acquired. A public way may be laid off by the legislature; I mean, by an act just directing the county commissioners to lay off a road through the country for the public, making it public by an act of law.    Or it may be that the county commissioners are authorized, empowered under the general law, to lay off a road through the country and thus make it public.    Or it may be that persons may dedicate the land along the line through a long stretch of country, may actually dedicate to the public a road, cut it out, dedicate and give it to the public, make it public.    There would not be much difficulty then in ascertaining whether that was a public road, if it were dedicated and given to the public, and the public received it without any further manifestation probably than of accepting and traveling it; but there are rules which govern and enable us to determine what public highways are, outside of the acts of the legislature and the acts of county commissioners; for instance, if a road runs from one public road across to another public road, and all the people travel it for all purposes generally—that is a public road.    It is often called a neighborhood road; but it is a public road, if they travel it for twenty years, and then they have the use of it by any particular adverse use—I mean, without any effort on the part of any one to defeat the right of any one who might try to ob-

struct it—it don't require anything; twenty years use of that kind of a road, running from one public road to another public road or from a public road to some other public place, as a town, or a mill, or a church, or something of that sort; anything that shows the road is for the use of all the people everywhere, that come from the ends of the earth, if they want to do that, on public business or on any business, private business or anything else; I don't mean public business, anything, they go that way; then that would be what is called a neighborhood road and a public road, and any one who stopped up that road would be indictable. Such a user by all the people for a period of twenty years would make it a public road, and people would have a right to be on that road, have a right to cross that road. There is another way, at least, in which a right may be acquired, and that is the law in reference to a private way. An individual, for instance, or one or two, or a few individuals, may have a way across the country, a way which is not running from one public road to another, or from a public road to some public place, or from some public place to some other public place, but simply a road which is convenient. It may run all around to various places but not connecting any public road or public places at all, as mills and churches and all that sort of thing, and they are called private ways. To acquire such a way as that, there must be some adverse possession—that is, they must not only use it for twenty years, but there must be something to show that they acquired it by acts, that there were acts along during the time somewhere to show that they acquired it by acts; that there were acts along during the time somewhere to show that they would not allow it to be stopped up; that they claimed it as their own and kept on claiming it that way, and that they defied the owners of the land in some way; that the owners of the land stopped it up and they unstopped it or something—I use that as an example, an illustration, and they used it thereafter as if they had a right of their own, and they were going to use it, going to have it, if it was obstructed they were going to throw out the

obstructions, and did throw them out—now twenty years of
that kind of user would give a legal right to what is called a
private way.   It may give one individual a private way
across a man's land, if he use it in that way across a man's
land for twenty years.   A private way differs possibly from
what is called a private path in our law.   A private path is
a bigger thing than that.   A private path is a neighborhood
road, which I have tried to explain, running from one public
road to another, from a public place to another public place,
and is used twenty years, when it is adverse possession, acts
of adverse claim.   That becomes a public road and is called
a private path.   There are three ways in which a legal right
may be acquired to cross the country, and, of course, if they
come to a railroad, they have a right to cross that, too, be-
cause a railroad in running through the country has to re-
spect the public rights of the people in that respect, whether
they are acquired before or afterwards.   Of course, if they
are acquired before the railroad is built, they must respect
those public places as they come on.   These rights may be
acquired after the railroad is run there.   They may be ac-
quired afterwards, because, if the legislature sees proper, the
county commissioners may lay off a road and let it cross the
railroad.   If the whole public have a twenty years user of a
line running across a track, through the country, crossing a
track, in the way I have explained—that is, a road running
from one public road to another public road, or from a public
place to another public place, it makes no difference if it does
cross a railroad, it gives the people a legal right to be on that
road at any point—I don't mean to stand anywhere on the
track or obstruct roads or anything wilfully, but it gives
them a legal right to travel that road; and then, again, pri-
vate ways may be acquired in the way in which I have men-
tioned by adverse possession, user, and it would be a traveled
place if that right is acquired by a person or persons.   It is
what is called a private way.   Now, that is what I under-
stand by it."   In determining the questions presented by this
exception, it is well settled that the charge is to be considered

in its entirety and not in detached portions. When thus construed, it will be thus seen that his Honor correctly charged that there are three classes of roads in this State, viz: 1, public highways; 2, neighborhood roads, and 3, private ways; that after defining these different classes of roads, he left it to the jury to determine whether the alleged traveled place was a neighborhood road or a private way; that if it was a neighborhood road and had been continuously used by the public for twenty years or more, the law would presume a grant or prescriptive right in the public to travel over the same, and it would be in contemplation of the statute a traveled place; while, on the other hand, if it was only a private way, it was not only necessary that the use should be continuous for twenty years, but likewise adverse to the claim of the owner. There is no question in the case of unenclosed woodland. The charge of the presiding Judge is so fully sustained by the case of Earle *v.* Poat, *ante,* 439, in which the opinion has just been filed, that we deem it only necessary to refer to that case, without citing other authorities.

The second exception is as follows: "In refusing to charge defendant's third request, to wit: '3. Proof of the mere fact that persons are accustomed for any number of years to travel along a path across the uninclosed lands of another, is not sufficient to prove that they had the right to travel there.' (a) It is respectfully submitted that his Honor erred in modifying, qualifying or explaining such requests, and in refusing to charge the same without modification, qualification or explanation; it being respectfully submitted that such charge, as written, was directed to meet the issues raised by the pleadings and the proof, as to whether the place where the intestate of plaintiff was killed was a 'traveled place,' under the statute, or not; and such request embodied the law as heretofore announced by this Court in reference to such place; and his Honor's modification, qualification, explanation and refusal was calculated to divert the minds of the jury from such issue, and to cause them to believe that a legal right could be acquired by the mere user for twenty years or

more, by persons on foot and on horseback, for convenience
only, of a mere path leading through the uninclosed lands of
another, even though such path did lead from one public road
to another, or from one public place to another; whereas, it is
respectfully submitted, that under the law a legal right can
not be acquired by mere accustomed using, for convenience
only, a mere path leading through the uninclosed lands of
another, even though such path might have led from one
public road to another or from one public place to another."
In refusing the request set out in the exception, his Honor
said: "In consequence of what I have already said, I cannot
charge you that, as it stands, and without going over what I
have said before, I will refuse that as it stands.  I tried to
explain to you what I regarded as a traveled place, and I will
have to qualify this just as I have been talking about a high-
way and street and traveled place."  The request ignored
the fact that the path might be a neighborhood road, and
assumed that it was a mere private way, and was, therefore,
properly refused.

The third exception is as follows: "That his Honor, in
refusing defendant's second and third requests, and in modi-
fying, qualifying or explaining the same, and in his definition
of what it took to constitute a 'traveled place,' erred, in that,
under his Honor's charge, the jury could well have con-
cluded that the mere user, for convenience only, by the public
for more than twenty years of a mere path leading through
the uninclosed land of another, would give to such persons
and the public generally a legal right to travel there;
whereas, it is respectfully submitted, that under the law no
such right could be acquired by such user, the same not being
adverse to the rights of the owner of the land."  This ex-
ception is disposed of by what has already been said.

The fourth exception is as follows: "Because his Honor
erred in his explanation, modification or qualification of the
defendant's fourth request, to wit: '4. Where the proof
merely shows, that for a long number of years persons have
been accustomed to travel along a path through the unin-

closed lands of another, then such use is only permissive, and the owner of such lands has the right at any time to prevent such persons from traveling along there.' (a) Because by such modification, qualification or explanation, his Honor instructed the jury, that such requests were good law, 'as far as it goes;' thereby leading the jury to believe that this request did not go far enough to declare the law as applicable to the issues made by the pleadings and the proof. (b) Because his Honor, by such explanation, qualification or modification, further charged the jury, that if it were proven that the whole public used it for twenty years, and that it ran from one public road to another, or from one public place to another, then it would not be permissive—it would be a neighborhood road or public road, or what would be called a private path; thereby instructing the jury, the mere user, for twenty years or more, by persons or the public generally of a mere path, leading through the uninclosed lands of another, would give to such a person and the public generally, a legal right to travel along such path, if it lead from one public road to another or from one public place to another; whereas, it is respectfully submitted, that no legal or adverse right can under the laws be acquired by the mere accustomed use of a mere path through the uninclosed lands of another, even though such path does lead from one public road to another or from one public place to another. (c) Because in so modifying, explaining or qualifying defendant's fourth request, his Honor charged upon the facts, contrary to the inhibition of sec. 26, art. V., of the Constitution of this State, and gave to the jury his Honor's ideas of what facts it would take to constitute the adverse use of a path leading through the uninclosed lands of another, and what facts it would take to make it a neighborhood road." In disposing of the said request, his Honor said : "That is to say, gentlemen of the jury, as to the facts stated—that is, with the proof they suppose, and merely the proof that for a long number of years persons have been accustomed to travel along a path through the uninclosed lands af another—then such use is

only permissive, and the owner of such land has the right at
any time to prevent such persons from traveling along there;
that contains the law, so far as it goes.    If it were further
proven that the whole public used it for twenty years and
that it ran from one public road place to another, then it
would not be permissive; it would be a neighborhood road,
a public road, or what would be called a private path; or if
it were not a road from one public place to another, but it was
for the convenience of one or more persons and they had
used that twenty years adversely, then it would be a private
way; or if the legislature had passed an act for the county
commissioners to lay it off and they had done so, then it
would be a public highway.    With that qualification, I
charge that request; but it changes it so much that it amounts
to a refusal almost."    The rulings of the presiding Judge
were in harmony with the principles which were hereinbe-
fore stated to be of force in this State.

The fifth exception is as follows: "Because his Honor, in
refusing defendant's second, third, fourth and fifth requests,
or in modifying, explaining or qualifying them as hereinbe-
fore stated in previous exceptions, erred, in that his charge
in this respect was calculated to lead the jury to believe, that
the mere fact that persons or the public generally, on foot
and on horseback, had been for a long time accustomed to
travel over and along a mere path leading from one public
road to another, or from one public place to another over and
across the uninclosed lands, would be sufficient of itself to
give the public a legal right to use and travel the same, and so
make it 'a traveled place,' under the statute."    In disposing
of the fifth request, his Honor used this language: "I charge
you that, because it leaves out any supposition so far as proof
is concerned except that they did travel upon a path leading
through the uninclosed lands of another.    That supposition
does not embrace the supposition whether it was a public
road leading from one public road to another, or whether it
was used twenty years, or used twenty years adversely.    So,
with that simple supposition as it stands, a path leading

through the uninclosed lands of another, I charge you that."
This exception is disposed of by what was said in consider-
ing the other exceptions.

The sixth exception is as follows : "In refusing to charge
defendant's sixth request, to wit : '6. It is the duty of one
approaching a railroad track for the purpose of crossing it,
to exercise care and caution, to prevent being injured or
killed by an approaching train.   He should look and
listen, and if he fails to do this, and by reason of this
failure, he is struck and killed, he cannot be said to
have exercised due care and caution.'   And in qualifying,
modifying or explaining such charge, and in holding that
such request embodied a charge on the facts.   (a) It being
respectfully submitted that such charge only directed the
minds of the jury to a principle of law that persons approach-
ing a railway track should exercise and use their senses of
sight and hearing in order to avoid being struck or killed by
an approaching train.   (b) That such request embodied a
rule of law, in that it requested that the jury be instructed
that persons approaching a railway track, intending to cross,
should exercise the only senses by which such persons could
acquire a knowledge of the approach of a train, and that a
failure to use such senses would be negligence.   (c) It is
respectfully submitted that such request was not a charge on
the facts, in that it did not refer to the plaintiff or to the
defendant in the case at bar, or to any supposed act of either
plaintiff or defendant, and was hypothetically stated in gene-
ral terms in explanation of the law applicable to the issues,
in accordance with the rules and decisions heretofore an-
nounced by this Court as being the law in this State, and
was, therefore, not a charge on the facts, as his Honor seems
to have supposed.   (d) Because his Honor, by refusing
such request, overlooked the rule or principle of law which
requires a person in approaching a railroad track, intending
to cross, to exercise his senses of sight and hearing in order
to avoid being injured.   (e) Because his Honor, in refus-
ing this request, overlooked the principle or rule of law, to

wit: that a person failing to use his senses in order to obtain a knowledge of danger, fails to exercise due care and caution, and if such failure causes an injury, then, as a matter of law, such failure is negligence." In disposing of the said request, his Honor used this language: "I would charge on the facts if I charged you that. I will charge by adding to that: If you find such conduct on the part of the person injured, or about to cross or attempting to cross, to be ordinary negligence. I cannot charge you that such a state of facts would be negligence. I cannot charge you that the omission or commission of a certain act would be a want of care or due caution; but I say, if he fails to do this, and you find that that was a want of ordinary care, then he could not be said to have exercised due care and caution. In approaching a track for the purpose of crossing, a person is bound to exercise due care and caution—that is, ordinary care, what an ordinary prudent person would do under the same circumstances. That is what he is bound to do." The reasons assigned by the presiding Judge shows that the request was properly refused.

The seventh exception is as follows: "In refusing to charge, without qualification, modification or explanation, the defendant's eighth request, to wit: '8. If one approaching a railway track, at a point where the view is obstructed and with which he is familiar and knows that it is difficult to see or hear a train, then it is incumbent upon such person to exercise more care and caution than would be required were he approaching the track at a point where the view is unobstructed; such person should look and listen for an approaching train, and if he fails to do so and heedlessly walks upon the track, and by reason of this is struck and injured, he cannot be said to have exercised due care.' And in modifying or qualifying the same, as his Honor did by instructing the jury, 'that he is bound under all circumstances to exercise due care and caution—that is, such as an ordinary prudent man would use; and the jury must be the judge in all cases as to what care he should have exercised.' The error being:

(a) That such request being hypothetically put and being directed to one of the issues of the case as disclosed by some of the evidence, embodied a sound principle of law, to wit: that it is always incumbent upon a person approaching a place where he knows of the increased danger, to exercise more care and caution than he is called upon to exercise at a place of less danger. (b) That a person approaching a place where he knows the danger is increased, is bound under the law to exercise his senses to avoid being injured; and the failure to do so, and the heedless putting himself in a place which he knows to be dangerous, should be declared as a matter of law to be a failure to exercise due care, and, therefore, negligence; and it was error not to have so instructed the jury. (c) Because it was error not to have instructed the jury that under the supposed state of facts, where a person knowing the danger heedlessly puts himself in a position to be injured, would be negligence. (d) In leaving it to the jury to say whether a person who knows of an increased danger, and yet notwithstanding this fails to use his senses to ascertain such danger, and heedlessly puts himself in a position to be injured, exercised due care and caution, and in not failing to instruct the jury, the one acting under the proper state of facts indicated by the request, would be guilty of negligence. (e) In failing to recognize the rule of law, which requires a person approaching a railway track, at a point where he knows of an increased danger, to exercise his senses of sight and hearing in order to ascertain whether it was dangerous or not to undertake to cross such track at a particular place and time." In disposing of the request, his Honor said: "I charge you that, with the qualification that he is bound under all circumstances to exercise due care and caution—that is, such as an ordinarily prudent person would use; and the jury must be the judge in all cases as to what care he should have exercised." His Honor charged the request except as modified, and the modification merely stated a well recognized principle of law.

The eighth exception is as follows: "In not charging,

without modification or qualification whatever, the defendant's ninth request, to wit: '9. Even if one is injured by an engine at a public crossing or traveled place, such person cannot recover damages on account of the failure to ring the bell or blow the whistle continuously for 500 yards from such place, if the person saw or heard the train in time to stop, and notwithstanding this stepped on such track just in front of the train, knowing it dangerous to do so.' And in modifying or qualifying such request by adding thereafter the following: 'Provided, you find that would be wilful or gross negligence, or provided you find he was doing some unlawful act.' It being respectfully submitted: (a) That the question of wilful or gross negligence, or the doing of some unlawful act, is not to be considered by the jury, unless it is shown that the failure to ring the bell or blow the whistle continuously for 500 yards before reaching the public crossing or traveled place contributed to the injury of one either in person or property; and it was error to instruct the jury to consider these questions, in connection with the supposed state of facts embodied in such request. (b) Because the request embodied a principle or rule of law, that the failure to ring the bell or blow the whistle continuously for 500 yards could not be said to have contributed to the injury of one who saw the train in time to stop, and notwithstanding this stepped on the track just in front of such train, knowing it to be dangerous to do so. (c) That his Honor's refusing to charge the request as written, and his addition thereto, overlooked the principle or rule of law enacted by the statute, and intended to be enforced thereby, to wit: that the ringing of the bell or sounding of the whistle was intended to give notice to travelers approaching the crossing intending to cross, of the coming of the engine and train; and if such notice was obtained either by sight or hearing, then the failure to ring the bell or blow the whistle could not have contributed to the injury, and the question of wilful or gross negligence or doing of an unlawful act should not have been

submitted to the jury in connection with such supposed state
of facts.    (d) Because submitting the question of wilful or
gross negligence, or the doing of some unlawful act, in con-
nection with the defendant's request, was calculated to lead
the jury to believe that if the engine fails to ring its bell or
blow its whistle for 500 yards continuously before reaching
a public crossing or .traveled place, a person who saw or
heard the train in time to stop, but notwithstanding this
stepped on such track just in front of such train, knowing it
to be dangerous to do so, and was injured, could recover,
unless he was guilty of wilful or gross negligence, or unless
he was doing some unlawful act; whereas, it is respectfully
submitted, if under the supposed state of facts indicated by
such request, a person is guilty of ordinary negligence, or the
lack of such care and caution as men of ordinary prudence
usually exercise, and by reason of this he is injured, such per-
son would be guilty of contributing to his injury, and under
such circumstances ought not to recover, and the jury should
have been so instructed."    In disposing of this request, his
Honor said: "I charge this after adding: Provided, you find
that would be wilful or gross negligence, or provided you
find he was doing some unlawful act."    The additional
words were in the language of the statute, and properly
charged.

The ninth exception is as follows: "In not charging, with-
out modification, qualification or explanation, the defend-
ant's tenth request, to wit: '10. If one sees or hears an ap-
proaching train in time for him to keep from getting on the
railway track in front of such train, it is his duty to stop
before entering upon said track; and if he fails to do this and
undertakes to cross such track just in front of the engine, and
by reason of this is struck and killed, then his family cannot
recover damages on account of such killing, for failure to
ring the bell or sound the whistle, as the statute requires,
even though it was at a public crossing or traveled place, and
even though the bell was not rung or the whistle blown, as
the statute requires.'    And in modifying and qualifying

such requests by adding, 'if you find that such conduct would be gross or wilful negligence, or he was committing some unlawful act.' The error being, as it is respectfully submitted, (a) That such request embodied the principle or rule of law, that inasmuch as the ringing of the bell or sounding of the whistle is only required to give notice to one approaching a railway track at a crossing or traveled place, intending to cross. When one sees or hears a train without the sounding of the whistle or the ringing of the bell, the requirements of the statute do not apply, and the questions in such case of the gross or wilful negligence or the doing of some unlawful act, should not, under such circumstances, be submitted to the jury. (b) That it was error, under the hypothetical state of facts embodied in such request, to submit to the jury the question of the gross or wilful negligence, or the doing of some unlawful act by the person injured. (c) That the question of the gross or wilful negligence or the doing of some unlawful act by a person injured at a crossing or highway, is only relevant and pertinent to the issue involved, after it has been shown that there was failure to ring the bell or sound the whistle, as the statute requires, and that such failure contributed to the injury complained of; and it is respectfully submitted that, under the hypothetical state of facts embodied in the request of the defendant, it could not be said that the failure to ring the bell or sound the whistle contributed to the injury, and it was, therefore, error to submit to the jury, together with this request, the question of the gross or wilful negligence or the doing of some unlawful act by the party injured. (d) That submitting to the jury the question of the gross or wilful negligence or the doing of some unlawful act by the party injured, under the hypothetical state of facts embodied in the defendant's request, was calculated to lead the jury to suppose that one who saw or heard the approaching train in time to keep from getting on the railway track in front of such train, and yet, nevertheless, undertakes to cross such track just in front of the engine, and by reason of this is struck and killed, then his

family could recover for such injuries, even though the jury
did conclude that he failed to exercise due care incumbent
upon a man of ordinary prudence and caution, and even
though by reason of such failure he contributed in a proxi-
mate way to his injury.    (e)  That in submitting to the jury
the question of gross or wilful negligence or the doing of
some unlawful act by a person injured, under the hypotheti-
cal state of facts embodied in defendant's request, his Honor
led the jury to believe that if one sees or hears an approach-
ing train in time for him to stop, and notwithstanding this
fails to do so, and undertakes to cross such track just in
front of the engine, and by reason of this is struck and killed,
that the family of such person could recover, unless he was
guilty of gross or wilful negligence or of committing some
unlawful act; whereas, it is respectfully submitted, that if
one knows of the approach of a train in time for him to stop,
before entering upon the track of the railway company along
which an engine is approaching, then if he be guilty of the
lack of ordinary care and caution, and the failure to exercise
such ordinary care and caution contributes to his injury, it is
sufficient to defeat his recovery, even though he was not
guilty of gross or wilful negligence or was not committing
something unlawful."   In disposing of this request, his
Honor said: "I charge you that, adding: If you find that
such conduct would be gross or wilful negligence or he was
committing some unlawful act."   This charge was proper,
under the statute.

The tenth exception is as follows: "In modifying or
qualifying the defendant's eleventh request, to wit: '11.
Even though a train fails to ring its bell or blow its whistle,
as the statute requires, this cannot be said to have contri-
buted to the injury, if the person who is injured heard or saw
the train in time to stop before getting on the track, and not-
withstanding this fact steps upon such track just in front of
an approaching train.'   And by adding to such request the
following: 'Provided, that you find that was gross or wilful
negligence, which would have been want of slight care or

33—63

that he was engaged in some unlawful act,' and he might have added in the correction of those other charges, is want of slight care. The error being: (a) that his Honor, by so qualifying or modifying defendant's request by adding the words complained of, overlooked or misconstrued the terms of the statute, which requires, that it must be shown first that there was a failure to ring the bell or blow the whistle for 500 yards continuously before reaching the crossing or public place where the injury is alleged to have taken place, and (2) that such failure must have contributed to the injury, before the question of gross or wilful negligence or the doing of some act, should be submitted to the jury. (b) That where it appears that the person injured saw or heard the train coming, then the failure to ring the bell or sound the whistle, as required by the statute, could not be said to have contributed to the injury, and the question of the gross or wilful negligence or the doing of some unlawful act by the party injured, ought not to be submitted to the jury. (c) That by the addition to this request of the words complained of, his Honor led the jury to believe that where a party sees, or hears, or knows of the approach of the train in time to avoid being injured by it, and notwithstanding this steps on the track just in front of the approaching train, then if the bell did not ring and the whistle sound, as required by the statute, he could recover, unless he was guilty of gross or wilful negligence or doing some unlawful act; whereas, it is respectfully submitted that under the circumstances supposed, a man could be guilty of such contributory negligence as would defeat his recovery, without being guilty of gross or wilful negligence and without doing an unlawful act." In disposing of this request, his Honor said: "I charge you that, making the same addition: provided, that was gross or wilful negligence, which would have been the want of slight care, or that he was engaged in some unlawful act, because gross negligence, I might have added in the correction of those other charges, is want of slight care." As herein-

before stated, this modification was proper, under the statute.

The eleventh exception is as follows: "Because his Honor erred in modifying or qualifying the defendant's ninth, tenth and eleventh requests to charge, by instructing the jury that, under the circumstances supposed in these requests, a person injured could recover unless he was guilty of gross or wilful negligence or was doing an unlawful act." This exception is disposed of by what has already been said.

The twelfth exception is as follows: "That his Honor erred in refusing to charge the defendant's ninth, tenth and eleventh requests, and by adding to these requests the words complained of, to wit: provided, you find that would be gross or wilful negligence, or that he was committing or doing some unlawful act,' without at the same time instructing the jury that a person injured at a crossing or traveled place could not recover unless it was shown that, in addition to the failure to ring the bell or sound the whistle, as the statute requires, that this failure contributed to the injury; it being respectfully submitted that unless it was shown that such failure did contribute to the injury, then it was error to instruct the jury to consider the question of gross or wilful negligence, or the doing of an unlawful act by the party injured." This exception is disposed of by what has already been said.

The thirteenth exception is as follows: "In not charging, without qualification or modification, the defendant's fifteenth request to charge, to wit: '15. A railroad train has a right of way over and along its track, and it is not negligence to run its train at a rapid rate of speed along its track at a point where persons have not acquired a right to be, unless it has been shown that the company knew that it might be expected for them to be there.' And in refusing such charge and in instructing the jury in connection therewith, that it was a matter for them, under all the circumstances, to say whether any particular rate of speed is too great or whether such speed shows negli-

gence. The error being, as it is respectfully submitted, (a) In leading the jury to believe that if a person is on a railway track where he has no legal right to be, then it might be negligence in respect to such person for the railway company to run its train along its track at such a point at a high rate of speed, even though it did not know and had no right to expect that such person would be at such point. (b) In ignoring the principle or rule of law which gives to railroad companies the right to regulate the rate of speed for its trains along its track at points where persons have not acquired a right to be, and where the railroad company does not know and has no right to expect that such persons would be at such place. (c) In overlooking the principle or rule of law that a person on a railroad track at a point where he has no legal right to be is technically, at least, a trespasser, and as to such person the railway company owes no particular duty except not to wilfully, or recklessly, or heedlessly injure him after it has acquired a knowledge of his presence there or after it has acquired a knowledge that a person might reasonably be expected to be at such a place." In disposing of said request, his Honor said: "I cannot charge you what, under stated circumstances, would be negligence. I told you negligence is the want of ordinary care, and I say that any rate of speed is a matter for the jury to say, under all the circumstances, whether any particular rate of speed is too great, and whether such speed shows negligence." The reasons assigned by his Honor show that the request was properly refused.

The fourteenth exception is as follows: "In not charging the defendant's sixteenth request to charge, to wit: '16. A railway company has the right to presume that a person approaching its railway track at a point where such person knows that the view is obstructed, at a point where there is no traveled place, that such person will look and listen for an approaching train and will take proper precaution to prevent being injured at such a place,' and in modifying and qualifying such request by charging that the

'railway company has a right to presume that a person approaching its track at such point will use ordinary care;' whereas, it is respectfully submitted that his Honor, in so modifying or qualifying this request, overlooked the principle or rule of law which requires a person undertaking to cross a railway track where he has no legal right to cross, must use the faculties of sight and hearing in order to prevent being injured, and that the failure to use such faculties is evidence of a failure to use due care and caution such as would contribute to his injury and prevent a failure to recover." In disposing of this request his Honor said: "I charge you in reference to that request, that the railway company has a right to presume that a person approaching its track at a point where such persons know that the view is obstructed at a point where there is no traveled place, will use ordinary care—that is, such care and caution as an ordinarily prudent person would use under the same circumstances. They have a right to expect that." The railroad company would not have the right to expect more than ordinary care, and the charge was correct.

The fifteenth exception is as follows: "In not charging the defendant's seventeenth request, to wit: '17. If a railroad train, in approaching a public crossing or traveled place, complies with the statute and either rings its bell or sounds its whistle, as the statute requires, such company has the right to presume that persons approaching such place will look and listen, and heed the ringing of the bell or the sounding of the whistle, and if it does this, it is not negligence to run its train while passing along such place at a rapid rate of speed;' and in leaving to the jury to say whether under the circumstances supposed it would be negligence in the railroad company to run its train along such place at a righ rate of speed. The error being, as it is respectfully submitted, (a) That such request, embodying as it does a sound principle of law, applicable and relevant to the issues raised by the pleadings and evidence, the jury should have been instructed, as a matter of law, that if

notice was given of the approach of its train in time for a person approaching its track to stop before entering thereon, the rate of speed in law and of itself was not negligence." In disposing of this request, his Honor said: "I cannot charge you that it is not negligence.   I can only charge you that it is a matter in which they have a right to expect that persons crossing the railroad under such circumstances will use ordinary care, and it is left for the jury to say whether the company is negligent or not."   The reasons assigned by his Honor show that the request was properly refused.

The sixteenth exception is as follows: "In not charging the defendant's eighteenth request, to wit: '18. Proof that a train was running at a high rate of speed at one place, is not of itself proof that the same train was running at the same rate of speed at another place;' and in submitting to the jury to say and determine whether proof of the fact that the train was running at a high rate of speed at a place other than the one where the injury is said to have occurred, was evidence of the fact that it was running at a high rate of speed at the place where it is said the injury did occur.   It being respectfully submitted: (a) That evidence of this kind was irrelevant.   (b) Was incompetent.   (c) That his Honor in submitting this fact to the jury erred, in that he overlooked the principle or rule of law, to wit: That evidence of the rate of speed of a railway train at one point could not be evidence of the rate of speed at another point described in the complaint.   (d) That evidence of a particular act at one place is not of itself evidence of an act at another place, thereby leaving the jury to judge of what evidence is relevant."   In disposing of this request, his Honor said: "That I take to be a matter of fact entirely for the jury, under all the circumstances of the case, as to the rate of speed at one place and the rate of speed at another place.   There is no law that I know of that governs that at all, as to whether a train running at a given rate of speed at one place will be running at the same rate at another place.   That is a matter of fact for the jury."   The reasons

assigned by the presiding Judge show that the request was properly refused.

The seventeenth exception is as follows: "Because his Honor erred in defining a traveled place and what it took to constitute such a place, in that, under his instructions, the jury might well have concluded, if indeed they were not bound to conclude, that the mere accustomed use for twenty years or more by the public generally of a mere path through uninclosed lands, was sufficient of itself to create an adverse user and give the public the legal right to travel along such path, if it happened to lead from one public road to another or from one public place to another; whereas, it is respectfully submitted that such use could not be adverse and would be sufficient to establish a legal right to travel along such path." This exception is disposed of by what has already been said.

The eighteenth exception is as follows: "Because his Honor erred in his charge, where he undertakes to define what it takes to constitute a 'traveled place,' and overlooks the distinction between the use for twenty years by persons generally of a mere path through uninclosed lands, and the use for twenty years of persons generally of a 'neighborhood road,' making the two synonymous, and thereby leading the jury to conclude that the rights of persons traveling along one are equal to the rights of persons traveling along the other." This exception is disposed of by what has already been said.

The nineteenth exception is as follows: "Because his Honor erred in his charge, where he undertakes to define the rights of persons traveling along a path leading through uninclosed lands of another which had been used for twenty years and the rights of persons traveling along a neighborhood road which has been used for the same length of time, thereby leading the jury to believe that such rights were equal one to the other, and that if the path led from one public road to another through unenclosed lands, the rights of persons traveling along it would be equal to the rights of

persons traveling along a neighborhood road. The error being that the accustomed use of such path for twenty years would not of itself be sufficient to give to persons the legal right to travel there and would not make it a 'traveled place,' while the accustomed use by persons of a neighborhood road would of itself be sufficient to give to persons a legal right to travel along it." This exception is disposed of by what has already been said.

The twentieth exception is as follows: "Because of error in charging the plaintiff's fourth request, to wit: '4. If you find that the signals were not given and the neglect to give them had any share or agency in producing the injury, you need not inquire whether such neglect was the proximate cause of the injury, for the statute only requires that it contribute to the injury;' and especially in adding the following qualifications to such request, to wit: 'that refers to an injury at a public crossing, highway, street or traveled place. The law requires that such signals shall be given for the benefit of persons crossing, and if you find that they were not given, the law says that is negligence *per se,* and if it contributed to the injury, the company is liable, and you need not inquire whether the failure was the proximate cause.' The error being, as it is respectfully submitted, (a) That this request as qualified overlooked the provision of the statute which provided if the person was guilty of gross or wilful negligence, or was doing an unlawful act which contributed to the injury, it would defeat a recovery, and his Honor, in failing to so instruct the jury while he was directing their attention to this phase of the case, failed to 'declare' or 'state the law,' as he is required to do by the Constitution of this State, by sec. 26, art. V., of said Constitution. (b) That this request, with this qualification, was calculated to mislead the jury and cause them to conclude if the signals were not given, as required by statute, by an engine approaching a 'highway,' 'street' or 'traveled place,' and such failure contributed to an injury, that the railroad company would be liable absolutely, independent of the fact

that the statute expressly provides that if the person injured was guilty of gross or wilful negligence, or was doing an unlawful act which contributed to his injury, then in such case he could not recover." His Honor in an exceedingly able charge stated the law substantially applicable to the case, and if the defendant desired the charge to be more specific upon any proposition, it was its duty to prepare requests to that effect.

The twenty-first exception is as follows: "In charging the plaintiff's sixteenth request to charge, to wit: '16. It is not to be assumed that a man in his senses will heedlessly imperil his own life—culpable negligence of the plaintiff's intestate, properly so-called—which contributed to the injury, must always defeat the action; but the nature of the primary wrong has much to do with the judgment whether or not the contributing fault was of a negative character, such as a lack of vigilance, and was itself caused by, or would not have existed, but for the primary wrong, it is not in law to be charged to the injured one, but to the original wrong doer.' The error being: (a) That in charging this request, his Honor charged upon the facts, contrary to the inhibition contained in sec. 26, art. V., of the Constitution of this State. (b) That when his Honor charged as follows: 'It is not to be assumed that a man in his senses will heedlessly imperil his own life,' he instructed the jury upon the facts of the case, and then told them as a matter of law, they must assume that a man in his senses would not heedlessly imperil his own life; whereas, it is respectfully submitted that whether a man would or would not imperil his life under a given state of facts, was a question to be determined by the jury from the evidence in the case, and was not a matter of law for the Court. (c) That in charging this request, his Honor eliminated and took from the jury the question of the gross or wilful negligence of plaintiff's intestate, or whether he was at the time doing an unlawful act which might or might not have contributed to his injury. (d) Because this request invaded the province

of the jury and was a charge on the facts, and his Honor in charging it advised the jury how to weigh the evidence, when he charged them that 'the nature of the primary wrong has much to do with the judgment whether or not the contributing fault was of a negative character, such as lack of vigilance, and was itself caused by or would not have existed but for the primary wrong, and it is not in the law to be charged to the injured one, but to the original wrongdoer.' Such questions, it is respectfully submitted, being questions of fact and not of law, Judges being prohibited by sec. 26, art. V., of the Constitution of this State, from charging on the facts." In disposing of this request, his Honor said: "I charge you that, as it is copied verbatim from a suit in 41 South Carolina, one of our reports." The reason for charging the proposition is satisfactory to this Court.

The twenty-second exception is as follows: "In charging the plaintiff's fifteenth request, the error being, it is respectfully submitted: (1) In overlooking the terms of the statute, which does not provide that the wilful or gross negligence, or the doing of an unlawful act, shall contribute as a *proximate* cause, but only that it shall contribute to the injury. (2) Because such request was calculated to lead the jury to conclude that if the person injured was guilty of 'gross or wilful negligence, or was doing an unlawful act,' which contributed to the injury, still he could recover, if such negligence or such act did not contribute as a proximate cause to the injury." The fifteenth request was as follows: "Contributory negligence is a want of ordinary care on the part of the person injured, by the actionable negligence of another combining and concurring with the negligence, and contributing to the injury as a proximate cause thereof, without which the injury would not have occurred." It states a sound proposition of law, and was properly charged.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE JONES *concurring*.    I have limited my concurrence in this case to the result reached, because of the language used in the opinion prepared by Mr. Justice Gary in reference to the exceptions complaining of error in the charge as to what constituted a "traveled place."    In my view, these exceptions should be sustained, if the Circuit Judge charged the jury that a mere use by the public of a path or way for twenty years continuously would give the public a legal right to its use so as to constitute such way a "traveled place," under the statute.    I understand the law to be that, in order to give the public a legal right to a way by reason of twenty years use thereof, such use must be adverse to the owner of the soil.    In the case of *Hankinson* v. *Railroad Co.,* 41 S. C., 20, the Court, by Chief Justice McIver, said : "The fact that all persons who desired to do so had been accustomed to use the footpath at the crossing in question with the knowledge and acquiescence of the railroad company, was not of itself sufficient to establish the legal right to cross, but there must be something more—something to show an *adverse* use of crossing, or something that the railroad company recognized the *right* of the public to cross at the point in question.    The same principles which govern where the question is as to an alleged right of way over the lands of a land holder acquired by prescription, must govern here."    The Court, after citing *Rowland* v. *Wolfe,* 1 Bail., 56; *McKee* v. *Garrett,* 1 Bail., 341 ; *Golding* v. *Williams,* Dudley, 92; quotes the rule in such case from *Sims* v. *Davis,* Cheves, 1, as follows : "That the use of every such way is permissive or held at sufferance, where the claimant has done no act showing that he claimed the right adversely, and the allowance of the use by the owner of the soil has been accompanied by any act which shows a recognition on his part of the right of the claimant to use the road without his permission."    This same rule was applied to a neighborhood road, in the case of *Hutto* v. *Tindall,* 6 Rich., 400, and there is no doubt that a neighborhood road is a public road.    *State* v. *Harden,* 11 S. C., 366.    When it is

sought to establish a right by prescription arising from evidence, of long user, such user should be shown to be adverse, whether applied to a mere private way or to a public way, whatever particular term may be used to designate such public way. The case of *State* v. *Sartor*, 2 Strob., 61, in so far as it may be deemed inconsistent with this view, is practically overruled by the case of Hutto *v.* Tindall, *supra,* but in the case of *State* v. *Sartor,* the jury were instructed that such use must be adverse, and the conviction of the defendant was sustained. The case of *State* v. *Floyd,* 39 S. C., 25, ought not to be given such effect as not only to overrule Hutto *v.* Tindall, *supra,* but as applied to this case to sustain a doctrine wholly inconsistent with that announced in Hankinson *v.* R. R. Co., *supra.* In the case of State *v.* Floyd, *supra,* the exception that the Court erred in charging the jury that the mere traveling over a road through woodland by the public for twenty years raises the presumption of a grant and gives a prescriptive right, was overruled because the Court could not find in the charge that the Judge held as imputed to him. I have been induced to say this much because I was unwilling to indorse the view that a mere twenty years use which is not adverse would constitute a path, or way, or "traveled place," in the sense of the statute. I think, however, that I can concur in the result in this case, on the ground that the Circuit Judge substantially charged that twenty years use by the public should be adverse to constitute the way a "traveled place." I confess that the charge is not perfectly clear on this point, but it appears that the Judge charged in these words: "It is oftentimes called a neighborhood road, but it is a public road if they travel it twenty years, and then they have the use of it by any particular adverse use, &c." Then follows language which seems to modify or explain this; but in a later portion of the charge there is this unequivocal statement, after correctly stating the rule requiring an adverse use in order to acquire a mere private way by prescription : "A private way possibly differs from what is called a private path in our law * * * a private

path is a neighborhood road, which I have tried to explain, running from one public road to another, from a public place to another public place, and (italics ours) *is used twenty years, when it is adverse possession, acts of adverse claim.* That becomes a public road and is called a private path."