6933

## STATE v. MEANS.

AMENDING INDICTMENT—WITNESSES.—In an indictment charging murder, calling the deceased by the wrong name in one instance, where from the context it may be readily seen who was intended to be called the deceased, is a mere clerical error, and if the bill is handed the grand jury for correction of such error, the witnesses need not again be sworn in open court.  But would this rule apply if it had been necessary for the grand jury to make a finding on any fact not relating to mere form?  The original indictment should have been demurred to.

26—80

Before JAMES ALDRICH, J., Fairfield, June, 1907. Affirmed.

Indictment against Robert Starke Means for murder of Anna Belle Russel. From sentence on verdict of guilty, defendant appeals.

*Messrs. Ragsdale* and *Dixon,* for appellant. *Mr. Dixon* cites: *The original indictment did not charge anything:* 10 Ency., 455; 1 Bish. Cr. Proc., secs. 88, 89, 90, 92, 93, 98, 507, 517, 518, 519, 520; 2 Hill, 397; 70 Mo., 480; 1 Rich., 179, 260; 3 McC., 377; Crim. Code, 60; Whar. Hom., secs. 796, 799, 807, 850, 851, 854, 856; 2 Bish. Cr. Proc., sec. 548; 2 Brev., 219; 1 Bish. Cr. Proc., sec. 677; 33 S. C., 113 *How witnesses must be sworn who testify before grand jury:* Rap. Cr. Proc., sec. 7; 1 Bish. Cr. Proc., secs. 864, 865, 867, 80, 108, 1395.

*Assistant Attorney-General DeBruhl* and *Solicitor J. K. Henry,* contra. *Mr. Henry* cites: *In matters of form amendments are a matter of course:* 1 Brev., 169; 22 Cyc., 208, 433. *On resubmission, witnesses need not be reexamined:* 22 Cyc., 209; 59 Ia., 279; 9 Ency., 16 n. 3; 45 S. C., 512; Cr. Code, 57.

June 29, 1908. The opinion of the Court was delivered by

MR. JUSTICE GARY. The defendant was indicted for the murder of Anna Belle Russel; upon his trial, the jury rendered a verdict of guilty, and he was sentenced to be hanged; whereupon he appealed to this Court.

At the June term of the Court of General Sessions for Fairfield county the solicitor handed out to the grand jury an indictment in the above entitled cause, of which the following is a copy:

"State of South Carolina,

County of Fairfield.

"At a Court of General Sessions, begun and holden in and for the County of Fairfield, in the State of South Carolina, at Winnsboro, in the county and State aforesaid, on the second Monday of June, in the year of our Lord, one thousand nine hundred and seven.

"The jurors of and for the county aforesaid, in the State aforesaid, upon their oath, present, that Robert Starke Means, on the twelfth day of March, in the year of our Lord, one thousand nine hundred and seven, with force and arms, at Winnsboro, in the County of Fairfield, and State of South Carolina, in and upon one Anna Belle Russel, Starke Means feloniously, wilfully and of his malice aforethought did make an assault and that the said her, the said Anna Belle Russel, then and there feloniously, wilfully and of his malice aforethought with a certain loaded pistol did shoot, strike, penetrate and wound; giving to the said Anna Belle Russel thereby in and upon the body of her the said Anna Belle Russel one mortal wound; of which said mortal wound the said Anna Belle Russel did then and there soon afted die, to wit, on the sixteenth day of March, the same year aforesaid.

"And so the jurors aforesaid, upon their oath aforesaid, do say that the said Robert Starke Means, her the said Anna Belle Means then and there, in the manner and by the means aforesaid feloniously, wilfully and of his malice aforethought, did kill and murder against the form of the statute, in such case made and provided, and against the peace and dignity of the State.   J. K. Henry, Solicitor."

On this indictment the clerk started to arraign the defendant, and read to the words "Anna Belle Means," when the arraignment was discontinued, and the bill corrected and returned to the grand jury with amendment, and a State's witness without readministering the oath, was sent before the grand jury.

The indictment, when amended, read as follows:

"State of South Carolina,
    County of Fairfield.

"At a Court of General Sessions, begun and holden in and for the County of Fairfield, in the State of South Carolina, at Winnsboro, in the county and State aforesaid, on the second Monday of June, in the year of our Lord one thousand nine hundred and seven.

"The jurors of and for the county aforesaid, in the State aforesaid, upon their oath, present, that Robert Starke Means, on the twelfth day of March, in the year of our Lord one thousand nine hundred and seven, with force and arms, at Winnsboro, in the County of Fairfield, in the State of South Carolina, in and upon one Anna Belle Russel, feloniously, wilfully and of his malice aforethought, did make an assault, and that the said Robert Starke Means her, the said Anna Belle Russel, then and there feloniously, wilfully and of his malice aforethought with a certain loaded pistol, did shoot, strike, penetrate and wound; giving to the said Anna Belle Russel thereby, in and upon the body of her the said Anna Belle Russel, one mortal wound, of which said mortel wound, the said Anna Belle Russel did then and there soon after die, to wit: on the sixteenth day of March, in the same year aforesaid.

"And so the jurors aforesaid, upon their oaths aforesaid do say that the said Robert Starke Means, her the said Anna Belle Russel then and there, in the manner, and by the means aforesaid feloniously, wilfully, and of his malice aforethought, did kill and murder against the form of the statute, in such case made and provided, and against the peace and dignity of the State.   J. K. Henry, Solicitor."

The following statement appears in the record:

"The grand jury retired to one of the petit jury rooms to consider said bill.   No witnesses were sworn in open Court upon this bill of indictment.   John Taylor, one of the State's witnesses, however, was directed by the solicitor to go into the room where the grand jury was gathered.   This witness,

John Taylor, was not sworn in open Court on this particular
bill of indictment, nor were any other witnesses sworn in
open Court upon this new bill of indictment. John Taylor,
however, had been sworn on the first bill of indictment in
open Court.

"The grand jury returned into Court and the clerk pub-
lished their findings on the bill, which was as follows: 'True
bill. W. W. Cloud, Foreman.'

"Upon this second bill and the finding thereon of the
grand jury, the clerk proceeded to arraign the defendant,
when counsel for the defendant moved to quash the indict-
ment on the ground that the witness or witnesses on whose
testimony the grand jury had found a 'true bill' had not been
sworn in open Court, as required by law."

While there are numerous exceptions, the pivotal question
in the case is, whether his Honor, the presiding Judge, erred
in refusing to quash the indictment on the ground that the
witnesses, upon whose testimony the grand jury found a true
bill, had not been sworn in open Court.

Sections 56 and 60 of the Criminal Code are as follows:

Sec. 56. "Every indictment shall be deemed and judged
sufficient and good in law which, in addition to allegations
as to time and place, as now required by law, charges the
crime substantially in the language of the common law or of
the statute prohibiting the same, or so plainly that the nature
of the offense charged may be easily understood; and if the
offense be a statutory offense, that the same be alleged to be
contrary to the statute in such case made and provided."

Sec. 60. "Every indictment for murder shall be deemed
and adjudged sufficient and good in law. which, in addition
to setting forth the time and place, together with a plain
statement, divested of all useless phraseology of the manner
in which the death of the deceased was caused, charges that
the defendant did feloniously, wilfully, and of his malice
aforethought kill and murder the deceased."

It will thus be seen that every indictment is good in law,
which in addition to the necessary allegations of time and

place, (1) either charges the crime substantially in the language of the common law or of the statute prohibiting the same; or (2) so plainly that the nature of the offense may be easily understood. And that an indictment for murder is sufficient in form which sets forth (1) the time and place, (2) a plain statement of the manner in which the death was caused, and (3) which charges that the defendant did feloniously, wilfully, and of his malice aforethought kill and murder the deceased.

It is true, the first indictment was defective in form, but the errors were merely clerical, and were such as could be corrected by resorting alone to the context of the indictment.

The rule is thus stated in the case of the *State* v. *Jefcoat,* 20 S. C., 383, 385: "The authorities leave no doubt of the proposition, that mere clerical errors, or mere matters of form in an indictment, may be amended at any time, before plea pleaded, with the consent of the grand jury." See, also, *State* v. *White,* 15 S. C., 381.

Furthermore, although the said indictment was defective, the defect was apparent upon the face thereof, and the objection to its sufficiency was waived by the failure of the defendant to demur or make a motion to quash the same before the jury was sworn, as required by section 57 of the Criminal Code, which provides that "every objection to any indictment, for any defect. apparent upon the face thereof, shall be taken by demurrer, or on motion to quash such indictment, before the jury shall be sworn, and not afterwards."

If it had been necessary for the grand jury to make a finding upon any fact not relating to mere form, instead of correcting a clerical error apparent upon the face of the indictment, which only required a resort to the context of the indictment, quite a different question would be presented from that disclosed by the record.

But even if the amendment had related to a matter of substance requiring further testimony, it would not have been necessary to reswear the witnesses, as the first bill of

indictment attempted to set forth the same offense, which was charged in the second indictment.

. It is the judgment of this Court that the judgment of the Circuit Court be affirmed, and that the case be remanded to that Court, in order that a new day may be assigned for the purpose of carrying into execution the sentence of the Court.