## 11606

### STATE v. MILLER *ET AL.*

#### (125 S. E., 298)

1. HIGHWAYS—STATE PROSECUTING DEFENDANTS FOR OBSTRUCTING NEIGHBORHOOD ROAD MUST PROVE ADVERSE PUBLIC USER FOR TWENTY YEARS, UNDER CLAIM OF RIGHT.—In prosecution for obstructing neighborhood road, in which it affirmatively appeared that the road claimed to have been obstructed was and had been from the beginning a road through uninclosed woodland, the State was required to prove not only a continuous use of road by public for a period of twenty years or more, but also that such use was adverse and under a claim of right, adverse character of use not being inferred as matter of law, from uninterrupted use for such period.

2. HIGHWAYS—PUBLIC USE OF ROADWAY THROUGH UNINCLOSED WOODLAND FOR TWENTY YEARS OR MORE, TO GIVE PUBLIC PRESCRIPTIVE RIGHT, MUST HAVE BEEN ADVERSE AND UNDER CLAIM OF RIGHT.— Public use of road through uninclosed woodland for twenty years or more will not in itself sustain claim of public right by prescription in the way, but such use must have been adverse and under a claim of right.

3. HIGHWAYS—EVIDENCE HELD INSUFFICIENT TO PROVE ADVERSE CHARACTER OF PUBLIC'S USE OF ROAD THROUGH UNINCLOSED WOODLAND.— In prosecution for unlawful obstruction of neighborhood road through uninclosed woodland, in which the State claimed that the public, by uninterrupted use for more than twenty years, had acquired prescriptive right in the road, evidence *held* insufficient to prove that public's use of road was adverse and under claim of right.

4. CRIMINAL LAW—SUPREME COURT WILL REVERSE JUDGMENT OF CON-
VICTION AND REMAND CAUSE, WITH INSTRUCTIONS TO DIRECT VERDICT
FOR DEFENDANTS, WHERE OF OPINION THAT LOWER COURT SHOULD
HAVE DIRECTED SUCH VERDICT.—Under Supreme Court Rule 27,
the Court, on determination that verdict should have been directed
for defendants, will reverse judgment of conviction and remand
cause, with instructions to direct verdict for defendants.

Before SHIPP, J., Georgetown, June, 1924. Reversed
and remanded, with directions.

John A. Miller and Frederick W. Ford were convicted of
unlawfully obstructing a neighborhood road, and both ap-
peal.

*Mr. Walter Hazard,* for appellant, cites: *Appellants
were convicted and case reversed on appeal:* 125 S. C., 289.
*Court should direct verdict:* 91 S. C., 17. *Adverse claim:*
6 Rich. 396. *Evidence:* 117 S. C., 470. *Case at hand dis-
tinguished from:* 86 S. C., 154. *Error in charge to jury:*
47 S. C., 489; 51 S. C., 453; 61 S. C., 556; 85 S. C., 265;
56 S. C., 524; 76 S. C., 49; 68 S. C., 153; 86 S. C., 285;
85 S. C., 273; 113 S. C., 1.

*Messrs. L. M. Gasque,* Solicitor, and *Capers G. Barr,* for
respondent, cite: *Judge's charge correct:* 74 S. C., 425.
*Refusal to direct verdict correct:* 80 S. C., 376; 86 S. C.,
154.

November 11, 1924.

The opinion of the Court was delivered by MR. JUSTICE
MARION.

This is the second appeal from a conviction of the de-
fendants under an indictment charging that on December
2, 1922, they "did unlawfully obstruct a neighborhood
road," etc.

On the former appeal (125 S. C., 289; 118 S. E., 624)
this Court sustained defendant's contention that they were
entitled to have the jury instructed as follows:

"The rule in this State is that a prescriptive right arises
in favor of the public after continuous use of a road for

20 years, when it runs through cultivated land, but that, when is passes over uninclosed woodland, it must also be shown that the use was adverse and under a claim of right, and not by the owner's permission."

On the second trial in the circuit Court the defendants moved for a directed verdict upon the ground, among others, that there was no evidence tending to establish that the 20 years' continuous user of the road in question, relied on by the State to establish a prescriptive right in favor of the public, was *adverse.* Whether the verdict should have been directed upon that ground is a question which is decisive of this appeal on its merits. Our attention will therefore be wholly directed to a consideration of that question.

A correct determination of the question is not free from difficulty. That the road which defendants were charged with obstructing was, and had been from the beginning, a road through uninclosed woodland is, as we understand, not disputed by the State. In any event the evidence is open to no other reasonable inference than that the road here in controversy was a road of that character. That fact affirmatively appealing, under the law of this State, as recognized and laid down in the decision of this Court on the former appeal, it was clearly incumbent upon the State to establish not only a continuous use of the road by the public for a period of 20 years or more, but that such "use was *adverse* and under a claim of right." Somewhat more specifically stated our inquiry, therefore, is whether there was any evidence which as a matter of law would warrant the inference of *adverse* use of a road through uninclosed woodland.

In resolving that inquiry certain expressions of our Court bearing upon the rationale of the rule above adverted to, which recognizes a difference and makes a distinction between cultivated land and uninclosed woodland in this matter of establishing a highway or neighborhood road by prescription, are pertinent, and should be borne in mind.

In *Sims v. Davis,* Cheves, 1, 38 Am. Dec., 581, Judge Evans, speaking for the Court, said:

"As a general rule, I would say that the use of every such way is permissive, or held at sufferance, where the claimant has done no act showing that he claimed the right adversely, and the allowance of the use by the owner of the soil has been unaccompanied by any act which shows a recognition, on his part, of the right of the claimant to use the road without his permission. Most of the old roads which, like this, lead from one public road to another, or from neighborhood to neighborhood, sprung up from accident. In the early settlement of the country, paths through the woods were made by repeated traveling along the same track. In process of time, by continued use, these tracks were enlarged into cart and wagon ways. They were convenient to the proprietor's neighbors and did not interfere with his dominion over the land. In the beginning, therefore, they may be said to have originated in the tacit permission of the owner. The use continued in the same way, no one ever supposing that a use thus commencing could ever ripen into a right. An adverse use must be something for which the owner may sue. It must be something hostile to his entire dominion over his property."

In *Hutto v. Tindall,* 6 Rich. 396, cited and quoted with approved in the opinion on the former appeal in this case, the Court said:

"A distinction must therefore be observed, between the claim of a way through inclosed and cultivated land, and of a way over uninclosed woodland. In the former case, the mere use is an invasion of property, and a trespass, and acquiescence or submission to the exercise of a privilege, under circumstances which make it actionable, may justify the inference of a legal right in the person who exercises the privilege. But when the way passes over woodland those who travel it commit no trespass (at least not until after notice to desist), and subjects the owner to no loss or

inconvenience. To prohibit them would be considered churl-ish, and would be ineffectual, unless a constant watch was kept to prevent them. And to require the owner to secure his land against an adverse claim, by a use not actionable, of a way over it, would to that extent exclude his property from the protection of the law."

The foregoing expressions are sufficient to indicate that the rule requiring that in addition to proof of the continuous use of a road for 20 years or more in order to establish a prescriptive right, "when it passes over uninclosed woodland it must also be shown that the user was adverse," proceeds upon the theory, soundly grounded in conditions which are a matter of common knowledge in this country, that the user of a road through uninclosed woodland is, in effect, a user by license or per-mission of the owner of the land. Hence the mere fact of a public use of such a road for any length of time will not sustain a claim of public right by prescription in the way (see *Fanning v. Stroman,* 113 S. C., 495, 498; 101 S. E., 861; 29 C. J., 377, § 9), since, as was said by Chief Justice Marshall in *Kirk v. Smith, etc.,* 9 Wheat. 288, 6 L. Ed. 91:

"It would shock that sense of right which must be felt equally by legislators and by judges, if a possession which was permissive, and entirely consistent with the title of another, should silently bar that title."

That proposition necessarily embraces the point that mere use by the public of a way through uninclosed woodland for any length of time is insufficient of itself to support the inference that the use was adverse and hostile to the rights of the owner. The decision of this Court in *State v. Toale,* 74 S. C., 425, 429; 54 S. E., 608, relied upon by the State to support a contrary contention, is not in conflict with that view. It is true the reporter's abstract of the holding in that case is somewhat misleading. The Court did not there hold, as stated in the syllabus, that:

"Testimony tending to show that a well-defined road was laid out through uninclosed woodland, and used by the public for more than 20 years, is some evidence of adverse user."

What the Court really held, after stating certain testimony adduced at the trial, was as follows:

"This testimony tends to show that the road ran through the land at a time when it was not inclosed (uninclosed) woodland; that a well-defined road was laid out; and that the use thereof was adverse."

Clearly, that construction of the testimony in that case is not authority for the proposition advanced by the State in this case, that the adverse character of the use of a road through uninclosed woodland may be inferred from the mere use by the public of a well-defined road over such land for an uninterrupted period of 20 years or more.

If the fact of continuous use by the public of a road through uninclosed woodland for a period of more than 20 years is not sufficient of itself to support the inference that such use was adverse to the rights of the owner, careful scrutiny and consideration of the record in the case at bar fail to disclose any evidentiary basis for a finding that this road was continuously used *adversely* for a period of 20 years prior to the date of the alleged obstruction. The evidential facts relied upon by the State to establish such adverse use are, substantially, as follows: (1) That about the year 1906 the county supervisor did some repair work on the road; (2) that at various times during a period of 20 years preceding 1918 a former owner of the land had stopped or turned back persons from using the road; (3) that a map of the plantation made in 1918 indicated this road by the letters "N. R.," standing for neighborhood road; and (4) that one or more of the persons who had used the road for 10 or 12 years after 1892 were not on friendly terms with the person who during that time was a lessee of the land. As to the first fact, that about 1906 some work was done on the road by the public authorities, if such work

be regarded as sufficient to establish the assertion of an adverse claim on the part of the public, it would seem clear that it may not be given a retroactive effect. And even if that one act of repairing the road in the period from 1903 to 1906 be permitted to give character to the entire subsequent use of the road as adverse to the rights of the owner, it does not then appear that there was such use for the full period of 20 years prior to the date of the alleged obstruction on December 2, 1922.

Nor do we think that the fact that a former owner of the land had at his pleasure exercised dominion over the road by turning back travelers thereon from time to time for 20 years or more justifies the inference that the use of the road by all persons who were not stopped was adverse to the rights of the owner rather than by his permission. Certainly, such evidence tends to disprove rather than to establish that there was the necessary continuous uninterrupted adverse user by the public generally for the required period of time. As to the map, we do not think the mere fact that the surveyor used the letters "N. R.," thereon to designate this road, certainly in the absence of any evidence that the letters were intended to signify "Neighborhood Road" in the technical sense, may legitimately be construed either as an admission on the part of the owner of the land that the public had therefore asserted an adverse right, or as notice to the owner that such adverse right was then being asserted by the public. Nor does the fact that a lessee of the plantation traversed by this road was not on friendly terms with one or more persons who used the road justify the inference that the use of the road by these particular persons, or by the public generally, was adverse and hostile to the rights of the owner of the land for the requisite period of time.

If none of the evidentiary facts relied upon by the State considered singly is sufficient of itself to establish adverse use, are the facts and circumstances of the case considered

together and in connection with each other sufficient to justify the inference of fact that there had been a continuous adverse user of this road by the public under a claim of right for a period of 20 years or more? Whether the principle of the law of circumstantial evidence that a combination of facts and circumstances may justify an inference which no single fact or circumstance, considered alone, wuold warrant (*Wertz v. Railway,* 76 S. C., 388, 394; 57 S. E., 194, and cases cited) may properly be applied to the determination of an issue of this kind, as it was applied in *State v. Rodman,* 86 S. C., 154; 68 S. E., 343, depends, of course, upon the particular facts and circumstances of the case. In the Rodman Case, the road ran through both the cultivated land and the uninclosed woodland of the same person, and the combination of facts and circumstances there held to justify submission of the issue of adverse user to the jury was essentially different from that in the case at bar. After careful consideration we can perceive no rational basis for holding that the facts in this case, which when considered singly have no probative force to establish adverse user, acquire any additional probative force to that end by combination. All of the facts considered together are entirely consistent with a permissive user of this road. It is not a case of fact 2 added to fact 2 making the fact 4, but rather of zero added to zero still producing zero.

For the reasons indicated we are constrained to hold that the motion for a directed verdict in favor of the defendants should have been granted. The judgment of the circuit Court is accordingly reversed and the cause remanded to that Court, with instructions to direct a verdict for the defendants under rule 27 of this Court.

Reversed.

MESSRS. JUSTICES WATTS, FRASER and COTHRAN concur.

MR. CHIEF JUSTICE GARY did not participate.